## HILL ET AL. v. B., C. R. & N. R. Co.

1. **Railroads:** LIABILITY OF INTERMEDIATE CARRIER FOR NEGLIGENCE
   OR OVERCHARGE OF SUBSEQUENT CARRIERS.   Where a shipper applies
   to the station agent of an initial carrier for a through rate for goods to
   a distant point, requiring the goods to be carried over several distinct
   lines of railway, and the station agent in turn makes inquiry of the
   general freight agent of an intermediate carrier, and receives from him
   the through rate from the point where the goods are to be received by
   such intermediate carrier to the place of destination, however the inter-
   mediate carrier may thereby become bound to the initial carrier, it does
   not thereby become liable to the shipper for the negligence or overcharge
   of carriers subsequent to itself.   Whatever guaranty the transaction
   may have implied, as to the conduct and charges of subsequent carriers,
   must be regarded as personal between the intermediate and initial
   carriers.

*Appeal from Linn District Court.*

MONDAY, DECEMBER 11.

THE plaintiffs aver in their petition that the defendant as
a common carrier entered into an agreement with them,

whereby it undertook to transport for them a car-load of butter from Cedar Rapids, Iowa, to Denver, Colorado, and to deliver the same in good condition; that the butter was delivered to the defendant at Cedar Rapids in pursuance of such agreement, but that the defendant failed to deliver the same at Denver in good condition, whereby the plaintiff sustained damages in the sum of $833.80. They also aver that they were obliged to pay $71.40 as an overcharge of freight.

The defendant for answer denies that it made an agreement with the plaintiffs to transport butter for them from Cedar Rapids to Denver, and denies all liability for overcharge.

There was a trial to a jury, and verdict and judgment were rendered for the defendant. The plaintiff appeals.

*Deacon & Smith*, for appellant.

*J. & S. K. Tracy* and *A. D. Collier*, for appellee.

ADAMS, J.—The plaintiffs are the proprietors of a creamery at Springville, Iowa, at which place is a station on the Chicago, Milwaukee and St. Paul Railroad. The butter was shipped from Springville over the C., M. & St. P. Railroad to Cedar Rapids, thence over the defendant's road to Burlington, thence over the C., B. & Q. Railroad, and other roads through Kansas City to Denver. It appears that from Kansas City the butter should have been shipped over the Kansas Pacific Railroad, but by mistake it was shipped over a more circuitous and an improper route, and by reason of such mistake, and a failure to keep the car iced, the butter was injured.

The defendant's position is that it had no contract with the plaintiffs, except to carry their butter safely over its own road, and make proper delivery to the proper connecting line, which it did. The plaintiffs, on the other hand, contend that the defendant's contract was that the butter should be carried safely to its destination. It is not claimed that such contract was expressed in so many words, but that the law implied such contract from the undisputed evidence as to

what was said and done.   They also contend that, if the evidence is not sufficient. to raise such contract by implication, it would have been, but for the error of the court in excluding proper evidence offered by them.

The court gave three instructions at the request of the defendant, the giving of which the plalntiffs assign as error. The instructions are lengthy, and we cannot properly set them out *verbatim.*   The court instructed the jury in substance that the facts relied upon by the plaintiffs (specifying them), did not, if proven, makc the defendant more than a mere intermediate carrier, and that, as such intermediate carrier merely, it was not liable for an injury occurring beyond its line.

The plaintiffs contend that, so far as the defendant is concerned, the consignment should be deemed to have been made, not at Springville, but at Cedar Rapids, and that the defendant was not, therefore, an intermediate, but the initial, carrier.   One of the facts relied upon by the plaintiffs pertains to what was said and  one respecting the rate of freight from Cedar Rapids to Denver.   The plaintiffs, it appears, were acquainted with the rate of freight from Springville to Cedar Rapids.   Having conceived the idea, however, of making a shipment to  Denver, they made application to the station agent at Springville of the C., M. & St P. R. Co. to get them a through rate to Denver.   He communicated this application to the Assistant General Freight Agent of C., M. St. P. R. Co., who applied to one, Mohler, the General Freight Agent of the defendant.   Mohler (to use his own language) gave the plaintiffs a rate of $2.05 per hundred on the shipment in controversy from Cedar Rapids to Denver.   This he did, however, by merely communicating with the agent of the C., M. & St. P. R. Co.   The butter was then delivered to the C., M. & St. P. R. Co., properly marked as consigned to the plaintiffs at Denver, and the C., M. & St. P. R. Co. issued to them a bill of lading, which was the only bill of lading issued.   Up to that time, no communication appears to have

been had directly between the plaintiffs and defendant.    The delivery to the defendant was made by the C., M. & St. P. R. Co., and no contract appears to have arisen between the plaintiffs and defendant, except by implication, from the receipt of the goods by the defendant from the C., M. & St. P. R. Co. We are unable to discover anything, from the facts above set out, tending to show that the defendant was more than a mere intermediate carrier.    It is true the defendant's general freight agent did what he called giving a through rate from Cedar Rapids to Denver.    But this did not, we think, make the defendant in any sense the initial carrier, nor joint contractor, nor partner with the companies between the terminus of its road and Denver.    There is nothing tending to show that Mohler did anything more than to communicate the aggregate of the previously established rates on through freight.    Possibly, as he was general freight agent of the defendant, it should be inferred that he had the power to fix the rate of freight over the defendant's road, but we see nothing tending to show that he had the power to fix the rate of freight over the other roads, and even if he had, it does not appear to us that it would follow that the defendant became joint contractor or partner with the other roads.    But it is said that there is direct evidence of an agreement, at least, with the C., B. & Q. Co., and that it was through the fault of that company that the loss occurred.    But the agreement with that company appears to have been a mere agreement as to their respective charges on freight that should be shipped over both roads.    A violation of such agreement by either might render it liable, to the other in case the other had guaranteed a through rate on the strength of the agreement. It would not, we think, have the effect to make the companies joint contractors or partners.

We have to say that we see no evidence tending to show that the defendant and the other companies, or that the defendant and the C., B. & Q. Co., were joint contractors or partners.

The plaintiffs contend, however, that the instructions were erroneous, at least in so far as they precluded a recovery for the overcharge. If any recovery could be had for the overcharge it must, we think, be upon the theory that the defendant guaranteed the rate of $2.05 to the plaintiffs. The evidence tends at least to support such theory. The defendant, on the other hand, insists that whatever guaranty was made, if any, was made to the C., M. & St. P. R. Co., with whom alone they had communication, and from whom they received the freight. In our opinion, the defendant's position must be sustained. It is true Mohler testified he gave the plaintiffs the rate. But the fact appears to be that the plaintiffs' names were not mentioned, and the communication was made solely to the C., M. & St. P. R. Co. One Sweatt, station agent at Cedar Rapids of the C., M. & St. P. R. Co., acting under an order made to him by telegram in these words: "Get a rate on 17,000 pounds of butter, Cedar Rapids to Denver, coming from Springville," applied at Mohler's office for such rate, and the same was given him orally, and a memorandum was made that the rate was asked for by Sweatt as agent of the C., M. & St. P. R. Co. Mohler being asked if he guaranteed the rate, answered: "We did to the Milwaukee company." It does not appear that he did so specifically, but we infer from the evidence that there was a general understanding that rates called for and given as this was, were considered as guaranteed to the company which calls for the rate. We could not hold that the defendant guaranteed the rate to the plaintiffs, without holding that, as a matter of law, the mere announcement of the rate to the initial carrier operates as such guaranty to the shipper. Whether the guaranty made to the C., M. & St. P. R. Co. should be deemed to inure to the benefit of the plaintiffs, is another question. They contend that it should. But it appears to us that the defendant's agreement was to the effect, merely, that whatever through rate from Springville the C., M. & St. P. R. Co. should agree upon with the plaintiffs, the defendants and companies on the

west would demand as their share only $2.05 per. hundred. We do not say that, if the defendant had collected for itself more than its published tariff rate, and the plaintiffs had thereby been compelled to pay in the aggregate more than they agreed to pay, the defendant would not be liable directly to the plaintiffs. But such is not the complaint. The defendant, it is shown, received $15, and it is shown that that was its due share. The complaint is that the defendant has not fulfilled its guaranty in respect to the charges of others. Such guaranty we think was designed to be personal as between the defendant and the C., M. & St. P. R. Co. as the initial carrier, and made to enable the latter to fix the through rate from Springville. We have not discussed every consideration urged by the plaintiffs. We deem it sufficient to say that we think the record discloses no evidence introduced or offered upon which a right of recovery can be based.

AFFIRMED.